IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

COUNTY OF KANE, )
)
         Plaintiff, )
)
v. ) No. 04 C 8014
)
SHELL PIPELINE COMPANY, LP, )
a foreign limited partnership, and )
PARSON'S ENGINEERING SCIENCE, )
INC., a foreign corporation, )
)
         Defendants. )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Shell Pipeline Company's ("Shell") motion to dismiss. For the reasons stated below, we deny the motion to dismiss.

## BACKGROUND

In November of 1988, a large quantity of a gasoline product was accidently released from a pipeline that is owned by Shell onto a property in Kankakee County, Illinois ("Kankakee property"). Shell hired Defendant Parson's Engineering Science, Inc. ("Parson") to clean up the contaminated area. Plaintiff Kane County of

1

Illinois ("County") alleges that from 1998 to the present, Shell and Parson have been periodically inspecting the Kankakee property and monitoring the contamination levels. The County further alleges that after the chemical spill on the Kankakee property Shell determined that it would need to remove soil from around the pipeline on the Kankakee property in order to conduct a visual inspection of the pipeline and make normal repairs and maintenance.

According to the County, on December 29, 2003, Parson performed a core sampling of the soil on the Kankakee property. The County contends that Defendants discovered that sites 4, 5, and 6, which are directly adjacent to the original spill site on the Kankakee Property contained benzene, toluene, ethylbenzene, xylene and MBTE in the soil and groundwater. The County alleges that in late January of 2004, Shell and Parson formulated a plan for the removal of soil from sites 4, 5, and 6 of the Kankakee property ("waste plan"). Under the waste plan, soils taken from sites 5 and 6 were to be handled as non-hazardous waste and transferred to landfills licensed to accept such waste. Soil from site 4 was allegedly designated under the waste plan as soil to be stockpiled at the Kankakee property, covered with plastic, identified with red "waste" labels, and to be inspected weekly by a waste specialist.

The County alleges that, contrary to the waste plan, Defendants did not stockpile the soil from site 4 on the Kankakee property. The County contends that instead, Defendants transported the soil from site 4 to Settler's Hill Landfill

("Settler's Hill") located in Kane County. According to the County, on January 26, 2004, Shell prepared a Generator's Waste Profile for the disposal of the contaminated soil on all sites of the Kankakee property. The profile stated that the waste was "solid with hydrocarbon," that it did not contain benzene, "was not subject to RCRA Subpart CC controls, and was otherwise non-hazardous." The County contends that such representations in the manifests for the soil were erroneous and were in direct conflict with the results of the December 29, 2003 core sampling data that indicated the presence of hazardous substances. According to the County, Defendants transported contaminated soil from the Kankakee property to Settler's Hill on February 5, 6, and 9 of 2004. The County alleges that Defendants were fully aware of the hazardous nature of the contaminated soil, but failed to inform the on-site personnel of Settler's Hill. According to the County, although Defendants were aware of the fact that hazardous materials had been delivered to Settler's Hill, Defendants waited until February 19, 2004, to notify Settler's Hill of the improper disposal of the hazardous waste.

The County brought the instant action against Defendants and the complaint includes a negligence claim against Shell (Count I), a negligence claim against Parson (Count II), a negligence claim against Shell based upon vicarious liability (Count III), a negligence *per se* claim against Shell and Parson (Count IV), and a trespass claim against Shell (Count V). Parson has filed an answer to the complaint and Shell has filed the instant motion to dismiss.

## LEGAL STANDARD

In ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). The allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *See also Baker v. Kingsley*, 387 F.3d 649, 664 (7th Cir. 2004)(stating that although the "plaintiffs' allegations provide[d] little detail. . . [the court could not] say at [that] early stage in the litigation that plaintiffs [could] prove no set of facts in support of their claim that would entitle them to relief."). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High School*, 144 F.3d 448, 445 (7th Cir. 1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). Under current notice pleading standard in federal courts a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action. . . .'" *See Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent

with the complaint" and that "[m]atching facts against legal elements comes later."). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carter*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any conclusions pled must "provide the defendant with at least minimal notice of the claim," *Id.*, and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claim." *Perkins*, 939 F.2d at 466-67. The Seventh Circuit has explained that "[o]ne pleads a 'claim for relief' by briefly describing the events." *Sanjuan*, 40 F.3d at 251.

## DISCUSSION

The only argument presented by Shell in support of its motion to dismiss is that the County is barred by the economic loss doctrine from proceeding on any tort theory. In support of the economic loss doctrine Shell relies upon *American United Logistics, Inc. v. Catellus Development Corp*, 319 F.3d 921, 926 (7th Cir. 2003). The economic loss doctrine bars "a tort remedy for product defects when the loss 'is rooted in disappointed contractual or commercial expectations.'" *Id.* at 926. The doctrine bars "[r]ecovery in tort for disappointed commercial expectations due to breach of implied duties and warranties between non-contracting parties" and thus, "[t]o recover in tort under the economic loss doctrine, a party must show harm above and beyond a party's contractual or commercial expectations." *Id.*

5

It is clear that based upon the above language in *American*, which Shell itself relies upon, that the economic loss doctrine is not applicable in the instant action. Although the courts have not strictly limited the economic loss doctrine to products liability claims, the court in *American* indicated that the main purpose of the doctrine is to address situations which warrant barring a recovery for economic losses associated with "product defects." *Id.* However, in the instant action, the County did not purchase the soil in question from Defendants. Neither is the County seeking recovery because it is dissatisfied with the quality of the soil it received. Rather the County is seeking recovery for the harm to the property at Settler's Hill as a result of Defendants' alleged negligence in failing to provide proper information with the soil. Had Defendants properly notified the County of the hazardous substances in the soil, Settler's Hill would likely have rejected the shipments from Defendants and all damages could have been avoided.

Defendants also cite *NBD Bank v. Krueger Ringier, Inc.*, 686 N.E.2d 704, 706 (Ill. App. Ct. 1997) in support of their position, but once again Defendants' own citation merely illustrates why the economic loss doctrine is not applicable in the instant action. In *NDB Bank* the plaintiff had purchased a parcel of land from the defendant. *Id.* at 706. The plaintiff subsequently sued the defendant because the plaintiff discovered a leaking underground petroleum tank buried on the property. *Id.* In the instant action Defendants claim that *NBD Bank* is somehow illustrative for the instant action because *NBD Bank* dealt with environmental cleanup. However,

beyond that superficial factual similarity the case is entirely distinguishable from the instant action. In *NBD Bank* the plaintiff entered into a contract to purchase real property. *Id.* Albeit, the thing purchased was real property rather than a "product," but the key is that the court found that the economic loss doctrine applied because the real property that was purchased was in essence defective. *Id.* At 706, 708. In the instant action the County is not seeking redress because it is dissatisfied with any defective product or commercial property. Had the County, for example, purchased the soil in question from Defendants for a construction project and the soil turned out to be contaminated, then under the analysis in *NBD Bank*, the economic loss doctrine might be applicable. However, such are not the facts in the instant case. Defendants' position in regards to the economic loss doctrine would expand the bounds of the doctrine beyond all reason.

Defendants also cite to *Ganton Technologies, Inc. v. Quadion Corp*, 755 F.Supp. 203, 205 (N.D.Ill. 1990) in support of their position that a "decontamination of property" and the "costs of cleaning up a contaminated site" are economic losses. (Mot. 5). However, once again Defendants have merely cited *Ganton* in a knee jerked fashion because the case dealt with environmental cleanup and applied the economic loss doctrine. A look at the substantive aspects of the case reveals that the case is in no way similar to the instant action. In *Ganton* the court was focused upon a third-party complaint. *Id.* at 205. The third-party plaintiff had hired the third-party defendant to clean up a chemical spill on the third-party plaintiff's property.

7

*Id.* The successor-in-interest of the third-party plaintiff acquired the property from the third-party plaintiff and thereafter sued the third-party plaintiff because of additional cleanup costs on the subject property. *Id.* The third-party plaintiff then sued the third-party defendant who had originally been contracted to clean up the chemical spill. *Id.* Thus, in *Ganton* there were allegations that the real property in question that was passed on to the third-party plaintiff's successor-in-interest was defective and there were allegations that there were defective services provided by the third-party defendant who was hired to clean up the original chemical spill. In the instant action, however, the County does not allege that it received any real property that is defective and the County is not suing Defendants because Defendants were hired by the County to clean up the hazardous waste contamination in the pertinent soil transported to Settler's Hill and did so in a negligent manner. The instant action is thus completely distinct from *Ganton* and the loss alleged by the County is far beyond the commercial expectations associated with the disposal of the soil from the Kankakee property.

Another case that is illuminating on the economic loss doctrine is *Board of Educ. of City of Chicago v. A, C and S, Inc.*, 546 N.E.2d 580 (Ill. 1989). In *A, C and S, Inc.* the plaintiffs were school districts that were suing the manufacturers and distributors of asbestos. *Id.* at 583-84. The Court in *A, C and S, Inc.* noted that under "the economic loss doctrine, the defect results in damages for the inadequate value of the product, costs of repair and replacement of the defective product, loss of

profits, as well as diminution in the value of the product because of its inferior quality and failure to work for the general purposes for which it was manufactured and sold." *Id.* However, the court considered the fact that the asbestos had contaminated the schools with a dangersous substance and resulted in property damage and the Court concluded that the economic loss doctrine did not apply in that instance. *Id.*

Although the economic loss doctrine is not applicable in the instant action, even if the economic loss doctrine were applicable in the instant action, there are recognized exceptions to the doctrine. The Seventh Circuit has indicated that the economic loss doctrine will not operate to bar a claim when: 1) the plaintiff's "property damage was caused by a sudden, calamitous, or dangerous occurrence," 2) "the plaintiff's damages are proximately caused by a defendant's intentional, false representation," or 3) "the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions." *American United Logistics, Inc.*, 319 F.3d at 927.

In the instant action, the County alleges that Defendants' negligence caused hazardous materials to be handled by employees at Settler's Hill that were unaware of the dangerous attributes of the substances that they were dealing with and thus the employees at Settler's Hill could possibly have been harmed by the substances. The County also alleges that the materials were disposed of in Settler's Hill which could

have contaminated the air, water supply, or leaked into adjacent soils and thus caused harm to the general public as well. For the purposes of a motion to dismiss we need not resolve whether or not such contamination to the environment or harm to Settler's Hill employees occurred. It is sufficient that the complaint alleges facts that permit such conclusions to be reasonably inferred. Thus, the first exception to the economic loss doctrine is applicable in the instant action because the alleged "property damage was caused by a . . . dangerous occurrence." *Id.*

Although the County has framed its claims under titles that indicate a negligence theory, the complaint clearly alleges that Defendants were aware of the hazardous substances in the soil delivered to Settler's Hill. The County specifically alleges that Shell "prepared false manifests for the handling of the waste" and that "prior to February 2004 both Defendants had actual knowledge that soils to be removed from Site 4 contained hazardous levels of benzene and/or toluene as detected in the core sampling performed on December 29, 2003." (Compl. Par. 25, 27). Thus, the second exception to the economic loss doctrine is also applicable because the County alleges that its "damages are proximately caused by a defendant's intentional, false representation" which in the instant action was the falsified manifests. *Id.*

# CONCLUSION

Based on the foregoing analysis, we deny Shell's motion to dismiss.

 

Samuel Der-Yeghiayan
United States District Court Judge

Dated: April 6, 2005